1

2

3

4

**UNITED STATES DISTRICT COURT**

5

**NORTHERN DISTRICT OF CALIFORNIA**

6

7

8

9

| | |
|---|---|
| **J. N. FEUER** *et al.*, | **Case No.: 10-CV-00279 YGR** |
| **Plaintiff(s),** | **ORDER RE ATTORNEYS' FEES REQUEST** |
| **vs.** | |
| **G. KENNEDY THOMPSON** *et al.*, | |
| **Defendant(s).** | |
| **W. M. ROGERS** *et al.*, | **Case No.: 12-CV-00203 YGR** |
| **Plaintiff(s),** | |
| **vs.** | |
| **G. KENNEDY THOMPSON** *et al.*, | |
| **Defendant(s).** | |

10

11

12

13

14

15

16

17

18

19

20

21          Two related shareholder derivative actions were brought on behalf of Wells Fargo and

22    Wachovia and against Directors of Wells Fargo and former Officers and Directors of Wachovia for

23    corporate mismanagement, breach of fiduciary duty, waste of corporate assets, indemnification, and

24    unjust enrichment.  The parties negotiated a non-monetary settlement in which Wells Fargo will

25    implement certain corporate governance reforms.  The Court approved the settlement but reserved

26    ruling on Plaintiffs' Motion for Award of Fees and Expenses.

27          Plaintiffs' counsel seek $1.8 million in attorneys' fees and expenses for prosecuting and

28    settling both actions.  Having considered the relevant factors, including the benefit conferred by the

1   settlement, the time and effort expended by counsel, the contingent nature of counsel's

2   representation, the difficulty and complexity of the litigation, and counsel's standing and ability, the

3   Court finds that an award of attorneys' fees and expenses in the amount of $500,000 is reasonable.

4   Therefore, the motion is **GRANTED IN PART** and **DENIED IN PART**.

5   **I.      BACKGROUND**

6           Both *Feuer v. Thompson et al.*, Case No. 10-CV-00279 ("*Feuer* Action"), and *Rogers v.*

7   *Thompson et al.*, Case No. 12-CV-00203 ("*Rogers* Action"), filed on January 20, 2010 and January

8   12, 2012, respectively, allege that former officers and directors of Wachovia disregarded their

9   fundamental fiduciary responsibilities, including in the purchase of Golden West Bank, and

10  disregarded the risks undertaken by Wachovia with respect to the packaging of subprime mortgages

11  into collateralized debt obligations and other securities.  The claims against the Wells Fargo

12  directors arise out of their failure to pursue these claims against the former officers and directors of

13  Wachovia, and for approving a no-consideration settlement in *Arace v. Thompson et al.*, Case No.

14  08-7905 (S.D.N.Y.) ("*Arace* Action"), which purported to release virtually any and all claims

15  against the former officers and directors of Wachovia (including many of the claims brought in the

16  *Feuer* and *Rogers* Actions).  The *Feuer* Action and the *Rogers* Action asserted virtually

17  indistinguishable claims arising out of the same conduct.  Plaintiffs in both Actions are represented

18  by the same counsel.

19          Approximately one month after filing the *Feuer* Action, counsel for Plaintiffs were informed

20  by Wachovia's counsel that many of the claims brought by Mr. Feuer had been released in the

21  settlement of the *Arace* Action.  On November 24, 2010, Mr. Feuer filed a motion in the *Arace*

22  Action to set aside the judgment.  On August 17, 2011, the Court in the *Arace* Action denied Mr.

23  Feuer's motion, and on September 16, 2011, Mr. Feuer appealed to the United States Court of

24  Appeals for the Second Circuit.

25          While the motion collaterally attacking the judgment in the *Arace* Action was under

26  submission, the *Feuer* Action was stayed from February 10, 2011 through December 14, 2011.

27  Approximately one month after the stay was lifted in the *Feuer* Action, on January 12, 2012,

28  Plaintiffs' counsel filed the *Rogers* Action.

1  Beginning in early February 2012, the parties began informal discussions in an effort to

2  resolve both the *Feuer* and *Rogers* Actions, which culminated in a global resolution of both Actions.

3  Owing to a ten-month stay of the proceedings (while Mr. Feuer collaterally attacked the judgment in

4  the *Arace* Action) followed by settlement negotiations, aside from settlement negotiations

5  themselves, very little substantive work was done in either the *Feuer* or *Rogers* Action.  The only

6  substantive work in the *Feuer* Action was the pre-suit demand, drafting two complaints, and drafting

7  an opposition to the Defendants' motions to dismiss.  The only substantive activity in the *Rogers*

8  Action was the filing of the initial Complaint.[1]

9  As a result of Plaintiffs' counsel's efforts in the prosecution and settlement of the *Feuer* and

10  *Rogers* Actions, Wells Fargo has agreed that its Board will adopt an Acquisition Oversight Policy

11  and the Risk Committee of the Wells Fargo Board will retain an outside consultant each year for

12  three years to advise the Risk Committee on risk concerns.  For this modest, non-monetary,

13  "therapeutic" achievement, Plaintiffs' counsel seek the sum of $1.8 million.

14  **II.     DISCUSSION**

15  Because Delaware law governs the claims, it also governs the fee award.  *Vizcaino v.*

16  *Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *Mangold v. Calif. Pub. Utils. Comm'n*,

17  67 F.3d 1470, 1478 (9th Cir. 1995)).

18  **A.     APPROPRIATENESS OF AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

19  Attorneys' fees may be awarded in a derivative action only where the settlement confers a

20  "specific and substantial benefit" on the corporation.  *See San Antonio Fire & Police Pension Fund*

21  *v. Bradbury*, 2010 WL 4273171, at *8 (Del. Ch. Oct. 28, 2010) (citing *Chrysler Corp. v. Dann*, 223

22  A.2d 384, 386 (Del. 1966)).[2]  The benefit conferred need not be monetary; however, it must "be

23  _____

[1] The complaint in the *Rogers* Action was never answered, no motions were filed, and no discovery

24  was taken in the case.  Although both Actions were preceded by pre-suit demands upon the
Wachovia Board and/or Wells Fargo Board, Plaintiffs' counsel did not make a demand on behalf of

25  Mr. Rogers.  Thus, Plaintiffs' counsel is not entitled to reimbursement for the time and effort of a
pre-suit demand counsel did not make.

26

[2] Under Delaware law, a fee award is appropriate if (i) the suit was meritorious when filed; (ii) the

27  action producing the corporate benefit; and (iii) the resulting corporate benefit was causally related

28  to the lawsuit.  *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997)
(citing *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 878 (Del. 1980)).  There is no dispute

1   'substantial' in the sense that its value to the interested class [or the corporation] is immediately

2   discernible rather than speculative in character." *Richman v. DeVal Aerodynamics, Inc.*, 185 A.2d

3   884, 885 (Del. Ch. 1962) (cited in *McDonnell Douglas Corp. v. Palley*, 310 A.2d 635, 636 (Del.

4   1973)); *see also Chicago Milwaukee Corp. v. Eisenberg*, 560 A.2d 489 (Del. 1989) ("where

5   shareholder litigation confers a substantial benefit on a corporation and no fund is available to pay

6   for the fees and expenses of plaintiff's counsel, it is appropriate for the corporation to absorb the

7   costs of plaintiff's attorneys' fees and expenses."). The settlement has resulted in the

8   implementation of corporate governance reforms. "'Courts have recognized that corporate

9   governance reforms provide valuable benefits' to corporations and their shareholders." *Wixon v.*

10  *Wyndham Resort Dev. Corp.*, Case No. 07-CV-02361 JSW, 2010 WL 3630124 (N.D. Cal. Sep. 14,

11  2010) (quoting *In re NVIDIA Corp. Derivative Litig.*, Case No. 06-CV-06110 SBA, 2009 U.S. Dist.

12  LEXIS 24973, at *11 (N.D. Cal. Mar. 18, 2009)). The Court finds that an award of attorneys' fees is

13  warranted under the substantial benefit theory. Having concluded that Plaintiffs' counsel are

14  entitled to an award of attorneys' fees and expenses, the Court must now determine an appropriate

15  award.

16  **B.      REASONABLE AWARD OF ATTORNEYS' FEES AND EXPENSES**

17          In determining an appropriate fee award, a court applying Delaware law considers the

18  "*Sugarland*" factors: (1) the benefits achieved in the action; (2) the efforts of counsel and the time

19  spent in connection with the case; (3) the complexity of the litigation; (4) the contingent nature of

20  the case; and (5) the standing and ability of counsel. *In re Cox Commc'ns, Inc. Shareholders Litig.*,

21  879 A.2d 604, 640 (Del. Ch. 2005) (citing *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 147-50

22  (Del. 1980)). Courts place the greatest weight on the benefit conferred by the litigation. *Americas*

23  *Mining Corp. v. Theriault*, 51 A.3d 1213, 1254 (Del. 2012), *rearg. den.* (Sep. 21, 2012). "The time

24  expended by counsel is considered as a cross-check to guard against windfalls, particularly in

25  therapeutic benefit cases" such as this. *In re Sauer-Danfoss Inc. Shareholders Litig.*, ―A.3d―,

26  2011 WL 2519210, at *17 (Del. Ch. Apr. 29, 2011) (citing *Brinckerhoff v. Tex. E. Prods. Pipeline*

27  _____

28  that the suit was meritorious when filed, conferred a benefit on Wells Fargo, and that the benefit is
    causally connected to this lawsuit; the dispute is over the size of the benefit conferred.

4

1     *Co.*, 986 A.2d 370 (Del. Ch. 2010)). "The party petitioning for attorneys' fees necessarily bears the

2     burden of persuasion on the elements of that claim." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115,

3     1125 (9th Cir. 2002).

4           Counsel portray the case as highly complex and extremely difficult, their labors as extensive,

5     and the results achieved by the settlement as outstanding. Despite this portrayal, they have provided

6     scant support for their assertions and inapposite cases to show that the requested fee award is

7     reasonable. While the benefits conferred upon Wells Fargo and its shareholders from these remedial

8     measures form an adequate basis to warrant an award of attorneys' fees, the fees requested are way

9     out of proportion to the benefit conferred upon Wells Fargo and its shareholders.

10             *1.*      *The benefit conferred by the litigation*

11           The value of a therapeutic benefit such as the corporate governance reforms provided in this

12     case is not easily translated into monetary terms. *Unite Nat. Ret. Fund v. Watts*, 2005 WL 2877899,

13     at \*5 (D.N.J. Oct. 28, 2005); *see Rosen v. Smith*, 11 Del. J. Corp. L. 989, 993, 1985 WL 21143 (Del.

14     Ch. Sep. 23, 1985) ("Obviously it is much more difficult to ascertain the reasonableness of an award

15     of attorney fees where no fund has been created and where the value of the benefit is unclear."). In

16     therapeutic benefits cases, courts applying Delaware law will compare fees awarded in lawsuits that

17     achieved similar results. *In re Golden State Bancorp Inc. Shareholders Litig.*, 2000 WL 62964 (Del.

18     Ch. Jan. 7, 2000) ("In cases generating nonquantifiable, nonmonetary benefits, this Court has

19     juxtaposed the case before it with cases in which attorneys have achieved approximately the same

20     benefits."); *In re Dunkin' Donuts Shareholders Litig.*, 16 Del. J. Corp. L. 1443, 1457, 1990 WL

21     189120 (Del. Ch. Nov. 27, 1990) ("When an unquantifiable benefit is involved, the *quantum meruit*

22     approach gives the Court a more equitable means of determining a reasonable fee").[3] "In the

23

24     [3] In some cases parties have proffered expert opinions to quantify the value of a therapeutic
settlement such as corporate governance changes. *In re Compellent Technologies, Inc. Shareholders*

25     *Litig.*, 2011 WL 6382523, at \*20-21 (Del. Ch. Dec. 9, 2011) ("The calculation does not aspire to
mathematical exactitude. … The calculation only serves to help establish an order of magnitude

26     within which this Court can craft an appropriate award. Perhaps most important, it aids the Court in
resisting overly generous awards by establishing a link between nonmonetary benefits and one

27     measure of economic value. Although the resulting calculation is admittedly rough, scientific

28     precision is not required when awarding fees."); *Unite Nat. Ret. Fund*, *supra*, 2005 WL 2877899, at
\*3, 5 ("Plaintiffs' expert, Mr. Monks, opines that the added value to Shell resulting from this

United States District Court
Northern District of California

1   context of a therapeutic benefit case, fee awards are minimized where the benefit is intangible or

2   limited in duration." *In re Golden State Bancorp Inc. Shareholders Litig.*, *supra*, 2000 WL 62964,

3   at *3.

4          "As proponents of the fee application, plaintiffs have the burden of establishing the value of

5   the claimed benefit." *In re Am. Real Estate Partners*, 1997 WL 770718 (Del. Ch. Dec. 3, 1997)

6   (citing *In re Diamond Shamrock Corp.*, 14 Del. J. Corp. L. 652, 659 (Sep. 14, 1988) ("The parties'

7   inability to quantify the benefit leaves the Court without any yardstick against which to measure the

8   reasonableness of the $1,075,000 fee request, other than on a *quantum meruit* basis")).  Counsel for

9   Plaintiffs seem to conflate their burden to show that an award of fees is appropriate under a

10  substantial benefit theory with their burden to demonstrate that the substantial benefit achieved by

11  the litigation entitles them to the fee award requested.  Plaintiffs argue that the former justifies the

12  latter.

13         Plaintiffs cite to a series of inapposite cases for the misguided proposition that "courts have

14  not hesitated to approve substantial attorneys' fees."  Unlike the settlement in this action, the

15  referenced settlements involved "substantial,"[4] "significant"[5] and/or "sweeping"[6] corporate

16

17  _____

18  settlement agreement is not less than $2.3 billion"); *Mesh v. Goldfield Corp.*, 60 F.R.D. 595, 598
    (S.D.N.Y. 1973) (accepting estimate of financial analyst proffered by corporation, who valued
19  economic benefit of the entire settlement agreement was $422,000, over Plaintiff's expert, who
    estimated benefit of $750,000).

20  [4] *In re Schering-Plough Corp. Shareholder Derivative Litig.*, 2008 WL 185809 (D.N.J. Jan. 14,
21  2008), involved substantial "structural" changes to the company's corporate management and
    governance, including a 350% increase in governance and compliance spending.  Additionally,
22  Plaintiffs' counsel in *Schering-Plough* had expended over 13,000 hours on the litigation; the
    proposed award was recommended by a third-party mediator, and agreed upon by the parties and the
23  insurance carriers who would pay the award.

24  [5] The settlement in *Lambrecht v. Taurel*, provided "**numerous and significant governance changes**
25  over the next three years, including adoption of 'Product Safety and Medical Risk Management' and
    'Compliance' Core Objectives.  The Stipulation also provides for changes in board-level and
26  management-level positions, and outlines changes in compensation, compliance training, discipline,
    and monitoring." 2010 WL 2985946 (S.D. Ind. Jun. 8, 2010) *report and recommendation adopted*,
27  2010 WL 2985943 (S.D. Ind. Jul. 27, 2010) (emphasis supplied).  Plaintiffs' counsel Richard D.
    Greenberg was counsel in *Lambrecht* and, unlike the fee request here, counsel in *Lambrecht*
28  supported their fee request with "'detailed information regarding the lodestar incurred in the case,

1   governance reforms that justified "substantial attorneys' fees" awarded.  In contrast, the benefit

2   achieved by the litigation here was modest and of limited duration.  Thus, the referenced cases do

3   not support Plaintiffs' counsel's substantial fee request.

4           To justify their fee request, Plaintiffs' counsel also provide a string cite to orders approving

5   prior settlements, each with a fee number in parentheses.  A string cite of this nature provides no

6   information about the terms of the prior settlement, the benefits achieved, the efforts that merited the

7   fee, or any of the other pertinent factors.  The Court notes, however, that each of the five string-cited

8   cases involved a negotiated fee agreement, which generally is not subjected to the same level of

9   judicial scrutiny as a disputed fee request, and hence, should be accorded less precedential weight.

10  *See In re Sauer-Danfoss Inc. Shareholders Litig.*, *supra*, 2011 WL 2519210, at *18 ("de-

11  emphasizing the precedential value of uncontested fee awards" where justification for fee was

12  lengthy string-cite without meaningful analysis of the relationship between the benefit and the fee).

13  In four of the cases the district court entered a form of order.[7]  Only one order, *In re Rambus Inc.*

14  *Derivative Litig.*, provides the information underlying the fee award.  Unlike the present settlement,

15  *Rambus* involved significant and far-reaching corporate governance reforms.[8]  2009 WL 166689

16  ──────────────────────────────────

17  broken down into seven separate categories of tasks' and 'a detailed breakdown, by firm and by
    category of expenses, of the total expenses incurred to date by Plaintiffs' counsel.'"

18  [6] *Unite Nat. Ret. Fund*, *supra*, involved "***sweeping and unprecedented***" corporate governance
    reforms expected to "result in ***billions of dollars*** of increased market capitalization" for the
19  company; and the company agreed to the requested fee award.  2005 WL 2877899, at *3, 5
20  (emphasis supplied).

21  [7] *In re Extreme Networks, Inc. Derivative Litig.*, Case No. 07-CV-02268 RMW, at ¶ 9 (N.D. Cal.
    Jul. 15, 2011) ("The Court hereby approves the Fee and Expense Award in accordance with the
22  Stipulation and finds that such fee is fair and reasonable."); *Pirelli Armstrong Tire Corp. Retiree
    Medical Benefit Trust v. Sinegal*, Case No. 08-CV-01450 (W.D. Wash. Jun. 10, 2011) ("The Court
23  hereby approves the Fee Award in accordance with the Stipulation of the parties."); *In re F5
    Networks, Inc. Derivative Litig.*, Case No. 06-CV-00794, at ¶ 8 (W.D. Wash. Jan. 6, 2011) ("The
24  Court finds that the Fee Award of $5,000,000.00 is fair and reasonable, and hereby approves the Fee
    Award."); *Alaska Elec. Pension Fund v. Olofson*, Case No. 08-CV-02344, at ¶ 8 (D. Kan. Aug. 25,
25  2010) ("The Court hereby approves the Fee and Expense Award to Plaintiffs Counsel in accordance
26  with the Stipulation and finds that such fee is fair and reasonable.").

27  [8] According to the order, the Settlement in *Rambus* provided that:
28          Rambus will adopt and implement several significant corporate governance reforms,
            including: 1) significant amendments to the Compensation Committee Charter; 2)

United States District Court
Northern District of California

1   (N.D. Cal. Jan. 20, 2009) ("the reforms provide substantial benefits to Rambus and its shareholders

2   by not only changing Rambus' options granting practices, thereby preventing any backdating of

3   Rambus stock options in the future, but also several of the reforms go beyond such practices and

4   require the implementation of broader corporate governance reforms which will have positive long-

5   lasting effects on Rambus and its shareholders."). For the corporate governance reforms achieved in

6   *Rambus*, counsel was awarded $2 million, which is approximately 10% more than what Plaintiffs'

7   counsel request here. Rather than supporting counsel's fee request, the case confirms that counsel's

8   fee request is out of proportion to the benefit conferred upon Wells Fargo and its shareholders.

9           After reviewing the pertinent case law,[9] including the many decisions cited by the parties, the

10  Court concludes that a therapeutic benefit provided in a case such as this warrants a $500,000 fee

11  award.

12                      2.       *The efforts of counsel and the time spent in connection with the case*

13          This factor has two components: (a) time and (b) effort. *See In re Sauer-Danfoss Inc.*

14  *Shareholders Litig.*, *supra*, 2011 WL 2519210, at *20. "The more important aspect is effort, as in

15  what plaintiffs' counsel actually did." *Id.* Although the effort component is the primary

16  consideration, the Court will consider the time/hours claimed by counsel first.

17

_____

18          stock ownership guidelines for the Company's executive officers and directors; 3) the
            hiring of a new Vice President of Finance with experience in public accounting as
19          well as in senior accounting roles in a public company, who will oversees all of
            Rambus' accounting functions; 4) the hiring of two Assistant Corporate Controllers to
20          oversee revenue recognition and financial systems and to oversee external reporting;
            and 5) the requirement that all finance, accounting, and stock administration staff
21          attend training in various areas of GAAP. In addition to the corporate governance
            reforms, Rambus agreed to pay $2 million in attorneys' fees and expenses.
22
    *In re Rambus Inc. Derivative Litig.*, *supra*, 2009 WL 166689, at *2.
23

24  [9] *See e.g., In re Golden State Bancorp Inc. Shareholders Litig.*, *supra*, 2000 WL 62964, at *3 n.19
    (awarding $500,000 fee award for therapeutic settlement) (collecting cases involving attorneys' fees
25  awards for therapeutic settlements; fee awards ranged from $180,000 to $400,000); *In re Chicago &*
    *N. W. Transp. Co. Shareholders Litig.*, 1995 WL 389627, at *5 (Del. Ch. Jun. 26, 1995) (finding that
26  class counsel's fee request of $525,000 at "high end of the range of fee awards for settlements
    providing only therapeutic benefits," and awarding $300,000); *In re Sauer-Danfoss Inc.*
27  *Shareholders Litig.*, *supra*, 2011 WL 2519210 (range for attorneys' fees in disclosure only
    settlements is $400,000 to $500,000 for one or two meaningful disclosures).
28

<div style="margin-left:auto; width:fit-content"><em>United States District Court<br>Northern District of California</em></div>

1                     *a)*      <u>*Time*</u>

2         Attorneys' fees in shareholder actions must be calculated so as to "fairly compensate

3 successful attorneys and encourage continued vigilance by the bar." *Goodrich v. E.F. Hutton Grp.,*

4 *Inc.*, 681 A.2d 1039, 1050 (Del. 1996); *Cooperstock v. Pennwalt Corp.*, 820 F. Supp. 921, 926-27 &

5 n.7 (E.D. Pa. 1993) ("Allowances should be sufficiently liberal to compensate lawyers adequately so

6 that use of the derivative action to police corporate management will be encouraged, but awards

7 should not be so generous as to foster strike suits.").[10]  Equally important to the incentive to bring

8 meritorious lawsuits is the incentive to litigate these suits efficiently.  *Seinfeld v. Coker*, 847 A.2d

9 330, 339 (Del. Ch. 2000) ("the Court does not want to be in a position of encouraging the churning

10 of wheels and devoting unnecessary hours to litigation in order to be able to present larger numbers

11 to the Court.") (quoting *In re Pullman Co. Shareholders Litig.*, Consol. C.A. No. 10013, Berger,

12 V.C. (Del. Ch. Nov. 29, 1988)).  Here, two considerations steer the Court's analysis.

13         First, the records show excessive billing.  Two law firms participated as counsel for

14 plaintiffs, Greenfield & Goodman, LLC ("G&G") and Shepherd, Finkelman, Miller, and Shah, LLP

15 ("SFMS").  Counsel have provided the Court with summary tables of the fee request broken down

16 by name, hourly rate, hours, and total.  They have provided no information from which the Court

17 may gauge the reasonableness of the hours expended or the reasonableness of the hourly rate

18 requested.[11]  Counsel claim billable amounts totaling $1,468,553.20 based upon 2206.35 hours

19 worked in the *Feuer* and *Rogers* Actions, and also seek to be reimbursed for work done in the

20

---

21 [10] A strike suit involves a shareholder derivative action begun with hope of winning large attorney
22 fees or private settlements, and with no intention of benefiting the corporation on behalf of which
the suit is theoretically brought.  *Cooperstock, supra*, 820 F. Supp. at 927 n.7.

23 [11] Counsel have expressed an ability to provide detailed billing records.  When a party has submitted
24 inadequate records, a court is "neither obligated to explain what type of records should be submitted,
nor to request additional information.  The burden of presenting the appropriate fee documentation
25 rests squarely on the shoulders of the attorneys seeking the award." *In re Washington Public Power*
*Supply System Securities Litig.*, 19 F.3d 1291, 1306 (9th Cir. 1994).  "Where the documentation of
26 hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*,
27 461 U.S. 424, 433 (1983).  Because the value of the settlement warrants a significantly lower fee
than counsel's claimed "lodestar" amount, the Court need not focus on this sub-factor as a cross-
28 check to guard against a windfall.

United States District Court
Northern District of California

1  separate *Arace* Action, an average billable rate of $665.60 per hour (the full fee request of $1.8

2  million yields a billable rate of $815.83 per hour).  Even the cursory information provided in the

3  "summary tables" reveals that the hours expended (and hence, the fees requested) are excessive.

4  The law firm of G&G claims to have expended 1046.05 hours for a "lodestar"[12] amount of

5  $818,428.75, which averages to $782.40 per hour.  Nearly half of the hours (49.4%) were billed by

6  Richard D. Greenfield, who claims a $985 per hour billing rate.  Nothing in the record reflects that

7  Mr. Greenfield's experience, standing or ability merits on hourly rate of nearly $1000 per hour.[13]

8  Nor does the record reflect any justification for allocating such a high proportion of work to an

9  attorney with the highest billing rate.

10  The SFMS law firm claims to have worked 1160.30 hours for a "lodestar" amount of

11  $650,124.50, which averages to $560.31 per hour (this hourly rate includes the work of eight legal

12  assistants/ paralegals).  SFMS's summary table also reflects inefficient use of staff, billing for the

13  use of seventeen individuals, five of whom billed less than ten hours, including a legal

14  assistant/paralegal who worked on the case for six minutes.

15  Second, Plaintiffs' counsel seek reimbursement for work performed on another case, the

16  *Arace* Action, during the ten months that this litigation was stayed.  The time spent on the *Arace*

17  Action is not compensable in this litigation.  *See Arbitrium (Cayman Islands) Handels AG v.*

18  *Johnston*, 705 A.2d 225, 237 (Del. Ch. 1997) *aff'd*, 720 A.2d 542 (Del. 1998) ("An award of

19  attorneys' fees is limited to the fees reasonably incurred to prosecute this action.").  Counsel have

20
21  [12] Under the lodestar/multiplier method, the Court first calculates the "lodestar" by multiplying the reasonable hours expended by a reasonable hourly rate.  *Pennsylvania v. Delaware Valley Citizens'*
22  *Council for Clean Air*, 478 U.S. 546, 565 (1986).  The court may then enhance the lodestar with a "multiplier," if necessary, to arrive at a reasonable fee.  *Blum v. Stenson*, 465 U.S. 886, 888 (1984).

23  [13] In a previous shareholder litigation, Mr. Greenfield similarly failed to justify his hourly billing
24  rate:

25  Richard D. Greenfield sought an hourly rate of $495.00.  His rate is apparently twice that of almost all admitted attorneys authorized to practice in this action and who
26  seek fees in this petition.  I cannot understand that request.  Nothing in the record reflects that Greenfield's experience, standing or ability merits on hourly rate of
27  almost $500 per hour.

*PaineWebber R&D Partners II, L.P. v. Centocor, Inc.*, 2000 WL 130632, at *5 (Del. Ch. Jan. 31,
28  2000).

United States District Court
Northern District of California

1   not explained how the motion to set aside the *Arace* judgment, which was denied, or the appeal of

2   that order, which was voluntarily dismissed,[14] contributed to the settlement or conferred a benefit on

3   Wells Fargo. *In re Infinity Broad. Corp. Shareholders Litig.*, 802 A.2d 285, 292 (Del. 2002) ("the

4   New York litigation neither promoted or influenced the global settlement in any meaningful way nor

5   resulted directly in any benefit to the shareholder class.").[15]   Although Plaintiffs argue that the

6   settlement in this case releases claims alleged in the *Arace* Action and appeal, counsel for Plaintiffs

7   have not justified an award of fees based upon work in connection with a separate lawsuit.

8                               b)      *Effort*

9           The effort expended in these Actions was minimal despite the time claimed.[16]   Aside from

10   the complaints and confirmatory discovery, Plaintiffs actually litigated very little, apart from the

11   settlement negotiations themselves.   Furthermore, many of the hours were spent on matters

12   unrelated to this case (*e.g.*, attacking the *Arace* judgment) or that did not confer a benefit on Wells

13   Fargo (*e.g.*, drafting fee petition,[17] attacking the *Arace* judgment).   Nor have Plaintiffs explained the

14   benefit conferred upon Wells Fargo through Plaintiffs' counsel filing the *Rogers* action, a second

15   shareholder action, substantially similar to the *Feuer* action.

16

17

18   [14] The appeal was withdrawn in March 2012, approximately one month after the commencement of
    settlement discussions in the *Feuer* and *Rogers* Actions.

19
20   [15] Not only have counsel not demonstrated that their efforts in the *Arace* Action contributed to the
    resolution of this litigation, their efforts collaterally attacking the judgment in *Arace* may have
21   delayed resolution of this proceeding.   The *Feuer* Action was stayed for ten months while Mr. Feuer
    collaterally attacked the judgment in the *Arace* Action.   Soon after the stay was lifted in the *Feuer*
22   Action, the parties began informal discussions in an effort to resolve the *Feuer* and *Rogers* Actions,
    which culminated in a global resolution of both Actions.
23
24   [16] Plaintiffs' counsel, Richard D. Greenfield, states that he will monitor implementation of the
    corporate governance reforms outlined in the Settlement Agreement and this should be factored into
25   any fee award.   Wells Fargo disagrees that Mr. Greenfield will provide these services in the future.
    That said, Plaintiffs' counsel has not demonstrated that these services are compensable prior to
26   performance or compensable as attorneys' fees in either the *Feuer* or *Rogers* Actions.

27   [17] *Louisiana State Employees' Ret. Sys. v. Citrix Sys., Inc.*, 2001 WL 1131364 (Del. Ch. Sep. 19,
    2001) (explaining that "plaintiff's counsel cannot recover for costs incurred in pursuing their fee
28   application" because such work confers no benefit on the corporation).

1        The Court cannot conclude that all the time was wisely spent or that the class benefitted from

2   the majority of the effort expended.  Nothing about this factor warrants departure (up or down) from

3   the range of similar settlements identified in factor 1, above.

4             *3.*     *The relative complexity of the litigation*

5        While shareholder lawsuits by their nature are complex, Plaintiffs have not shown these

6   Actions to be notably difficult or complex.  *In re Cox Commc'ns, Inc. Shareholders Litig.*, *supra*,

7   879 A.2d at 641 ("[T]here was not much work to be done, except in negotiating and later conducting

8   confirmatory discovery of a settlement.  There is no special complexity to the case.").  Aside from

9   opposing a motion to dismiss filed in the *Feuer* Action, the litigation was not complex.  In fact, the

10  main complexity cited in the fees motion was work done in a different case, mounting a collateral

11  attack on the judgment in the *Arace* Action.

12       Nothing about this factor warrants departure from the range of similar settlements identified

13  in factor 1, above.

14            *4.*     *Contingency risk*

15       The Court understands, based upon the affidavits accompanying the motion for attorneys'

16  fees, that the cases were undertaken on a contingency basis.  The Court recognizes that counsel

17  undertook a risk of spending many hours and incurring expenses in this litigation without any

18  assurance they would be paid for that time.  However, this is a normal risk in shareholder litigation

19  suits.

20       Nothing in this litigation justifies a risk-premium for taking the case on a contingency basis

21  so as to depart from the range of similar settlements identified in factor 1, above.

22            *5.*     *The standing and ability of counsel*

23       The attorneys who prosecuted the action represent that they have experience in shareholder

24  and derivative litigation.  Wells Fargo does not challenge the standing or ability of Plaintiffs'

25  counsel.

26       Nothing about this factor warrants departure from the range of similar settlements identified

27  in factor 1, above.

28

6.      *Conclusion regarding "Sugarland" factors*

After considering the above factors, the Court finds that a reasonable attorneys' fee in this case is $500,000, which includes Plaintiffs' counsel's expenses in this litigation.   The Court considers this award generous in the circumstances.   "This is no condemnation of the services of counsel.   Instead, this Court considers it a commendation for good work done on a contingency with modest … success." *In re Northwestern Corp. Derivative Litig.*, 414 F. Supp. 2d 914, 917 (D.S.D. 2005).

## III.      CONCLUSION

Accordingly, the Motion for Award of Attorneys' Fees and Expenses is **GRANTED IN PART** and **DENIED IN PART**.   The Court awards a total of $500,000 for attorneys' fees and litigation expenses.

This terminates Dkt. No. 132 in Case No.: 10-CV-00279 and Dkt. No. 20 in Case No.: 12-CV-00203.

**IT IS SO ORDERED**.

Date: June 14, 2013

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE